# STORCH AMINI & MUNVES PC

A New York Professional Corporation

Avery Samet
Member NY Bar

e-mail:  asamet@samlegal.com
direct:  212.497.8239

June 9, 2015

**VIA ECF**

Honorable Katherine B. Forrest
United States District Court for the Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

Re:   *Ahuja v. LightSquared Inc. (In re LightSquared Inc.)*, No. 15-cv-2342

Dear Judge Forrest,

    On behalf of appellant Sanjiv Ahuja, we write to respond to appellees' post-argument letter filed afterhours on June 5, 2015.[1] The letter is nothing more than a continuation of appellees' attempt to disown the very factual findings it successfully urged upon the Bankruptcy Court in order to obtain confirmation. Now that the Plan has been confirmed, appellees pretend the findings do not exist so that they may leave Mr. Ahuja – and Mr. Ahuja, alone – recovering nothing on account of his shares.

    By LightSquared's own admission, the valuation premise of the Plan underlying both feasibility and fair and equitable treatment was the Alternate Use approach:

> If Your Honor concludes, as we think you must, that the value of this company is at least the 9.6 billion that Moelis will testify it is, if Your Honor reaches that conclusion, then we think the plan is eminently confirmable. It satisfies each of the issues with respect to feasibility, with respect to plan treatment. It answers all of the confirmation questions.

---

[1] As a threshold matter, appellees' post-argument letter addresses a matter raised in both of Mr. Ahuja's opening and reply briefs and not previously addressed by appellees. Opening Appellate Brief at 12 n.4, 27, n.23; Reply Appellate Brief at 15.

3.9 Tr. 51:7-13 [LightSquared's Opening Statement]). LightSquared argued the same with respect to SPSO's feasibility objection to the Plan:

> Upon emergence from chapter 11, New LightSquared will be undertaking approximately $4.25 billion in debt obligations. **As will be attested to at the Confirmation Hearing, such debt obligations can be serviced, and are supported, by a total enterprise valuation of at least $9.638 billion.** Notwithstanding SPSO's statements to the contrary, this valuation is far from flawed or speculative. Indeed, the evidence presented at the Confirmation Hearing will show that LightSquared's valuation incorporates reasonable and appropriate comparables, metrics and assumptions, particularly in light of the game-changing values for mid-band spectrum emerging from Auction 97.

Confirmation Brief ¶177 (emphasis added). Accord In re DBSD North America, 634, F.3d 79, 106 (2d Cir. 2011) applying the same valuation premise to both the fair and equitable (id. at 94-100) and feasibility tests (id. at 106).[2]

Appellees are now trying to thread the needle between, on the one hand, the Bankruptcy Court's approval of their valuation premise underlying the Plan, and on the other hand, the Bankruptcy Court's conclusion that Mr. Ahuja did not establish with "requisite certainty" the same valuation premise. To do so, appellees make a mess out of the requirements of valuation and feasibility, and the April 7, 2015 hearing.

Post-trial, appellees moved for an order authorizing their use of cash collateral encumbered by SPSO. Doc. 2286. Appellees argued that SPSO was adequately protected because "the Court should look to LightSquared's going concern value and find that the Prepetition LP Lenders have a significant equity cushion." Doc. 2286 at ¶ 36.[3] Appellees then cited to the Hootnick testimony

---

[2] However, the same standard of appellate review does not apply to the two tests: whether the Plan treats impaired classes fairly and equitably is subject to *de novo* review (DBSD, at 95) and whether the Plan is feasible is reviewed for clear error (id. at 106). In DBSD, the Second Circuit also set forth the test for feasibility: "[t]o confirm a plan under Chapter 11, a bankruptcy court must find that the plan is feasible, or more precisely, that confirmation of the plan is not likely to be followed by the liquidation or, or the need for further financial reorganization of the debtor." This requires that the plan "must offer a reasonable assurance of success, but it need not guarantee success." Id. DBSD, 634 F.3d at 106 (internal quotations omitted). Feasibility is not identical to valuation but the feasibility determination necessarily depends on the valuation premise of the Plan. See, e.g., id., at 107 ("Given the bankruptcy court's valuation of a reorganized DBSD as worth between $492 million and $692 million, this debt reduction makes a big difference."); ("The Court also noted the likely attractiveness to future investors of DBSD's control over 20MHz of prime bandwidth, a 'finite' and 'very valuable' resource.") See also 5 Collier on Bankruptcy ¶1192.02 (15th Ed.)("Basically, feasibility involves the question of the emergence of the reorganized debtor in a solvent condition and with reasonable prospects of financial stability and success.") Despite the argument made by appellees at oral argument, there are no specific findings in the Bankruptcy Court's Decision detailing any further findings on feasibility.

[3] Cited in Appellant's opening appellate brief to this Court at 27, n. 23.

Hon. Katherine B. Forrest
June 9, 2015
Page 3

regarding Auction 97 as demonstrating that LightSquared's spectrum assets would continue to appreciate to conclude that "there is simply no risk of diminution" prejudicing SPSO. Id. at ¶37.

In response, at the April 7, 2015 hearing, SPSO argued that the Bankruptcy Court's Decision (from which Mr. Ahuja appeals) rejected this approach and, therefore, SPSO was at risk of a diminution in value: "The issue of diminution in value will always depend on 'what happens if.' As Your Honor pointed out, **the valuation that puts everyone gloriously in the money depends on a variety of things which have not occurred today occurring.**" 4.7 Tr. 22:17-21 (emphasis added). The Bankruptcy Court rejected that characterization because, as the Bankruptcy Court correctly noted, it had held the Plan to be feasible and therefore found that the regulatory approvals and combination of the estates were more likely than not to occur. Id. 22:25-23:2. The Bankruptcy Court went on to reason that if for some reason, those events did not occur "and we look around and we say oh, dear, **all those things that we said were problematic about the spectrum have actually turned out to be true, my collateral is worth a buck-fifty**, you get a very big diminution claim."[4] Id. 23:7-11 (emphasis added).

As reflected in the Decision and the Confirmation Order, the Bankruptcy Court adopted the Alternate Use approach as the valuation premise of the Plan. Pursuant to DBSD, the Bankruptcy Court was required to value the property (in addition to payment on their claims) that each of the New Investors will be receiving under the Plan, and in particular the property that Harbinger was receiving under the Plan, to ensure that they were not being paid more than in full and Harbinger is not receiving anything because of its equity. The reasons proffered by the Bankruptcy Court for declining to undertake the required analysis were deficient as a matter of law.

Respectfully,

Avery Samet

cc: All counsel of record

---

[4] A diminution claim is a super-priority claim administrative expense claim, which would be paid before virtually any other creditor. 11 U.S.C. § 507(b).