# MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP

| | 28 LIBERTY STREET | |
|---|---|---|
| **LOS ANGELES**<br>213-892-4000<br>FAX: 213-629-5063 | **NEW YORK, N.Y. 10005-1413** | **BEIJING**<br>8610-5969-2700<br>FAX: 8610-5969-2707 |
| **WASHINGTON, D.C.**<br>202-835-7500<br>FAX: 202-835-7586 | 212-530-5000<br>FAX: 212-530-5219 | **HONG KONG**<br>852-2971-4888<br>FAX: 852-2840-0792 |
| **LONDON**<br>44-20-7615-3000<br>FAX: 44-20-7615-3100 | Michael L. Hirschfeld<br>Senior Consulting Counsel<br>DIRECT DIAL NUMBER | **SEOUL**<br>822-6137-2600<br>FAX: 822-6137-2626 |
| **FRANKFURT**<br>49-69-71914-3400<br>FAX: 49-69-71914-3500 | 212-530-5832<br>Fax: 212-822-5832<br>E-MAIL: mhirschf@milbank.com | **SINGAPORE**<br>65-6428-2400<br>FAX: 65-6428-2500 |
| **MUNICH**<br>49-89-25559-3600<br>FAX: 49-89-25559-3700 | | **TOKYO**<br>813-5410-2801<br>FAX: 813-5410-2891 |
| | | **SÃO PAULO**<br>55-11-3927-7700<br>FAX: 55-11-3927-7777 |

July 17, 2015

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street, Room 1950
New York, NY  10007

Re:  *Sanjiv Ahuja v. LightSquared Inc., et al.*, No. 15-cv-2342, on appeal from
     *In re LightSquared Inc., et al.*, Ch. 11 Case No. 12-12080

Dear Judge Forrest,

We are the attorneys for LightSquared Inc. and its affiliate debtors ("LightSquared") and write in response to the letter (the "Ahuja Letter") to Your Honor of even date from counsel for appellant Sanjiv Ahuja ("Ahuja").  LightSquared opposes the relief sought by Ahuja, which would constitute a *de facto* 14-day stay of Judge Chapman's Confirmation Order, to be issued without reference to the merits of his appeal, and without a bond to ensure that LightSquared will be compensated for the damage it would suffer from such a stay.[1]

---

[1]  "A stay of a judgment pending an appeal is an exercise of judicial discretion and is not a matter of right." *In re N.Y. Skyline, Inc. v. Empire State Building Co. (In re N.Y. Skyline, Inc.)*, 520 B.R. 1, 5 (S.D.N.Y. 2014) (Scheindlin, J.).  Under Rule 8007 of the Federal Rules of Bankruptcy Procedure, district courts apply substantially the same four-factor test that circuit courts use to evaluate requests for a stay pending appeal from a district court order and that trial courts use to evaluate requests for injunctive relief:  (1) whether other parties would suffer a substantial injury if the stay were granted; (2) whether the movant has at least a substantial possibility of success on the merits of its appeal; (3) whether the movant would suffer irreparable injury if a stay were denied; and (4) whether the public interest favors a stay.  *See*

The Court has had the benefit of full briefing of Ahuja's appeal as well as oral argument and post-argument letter submissions, and is doubtless fully conversant with the merits of this appeal. LightSquared respectfully submits that Ahuja has failed to demonstrate any likelihood of success on the merits, and his request for a *de facto* stay accordingly should be denied. Additionally, LightSquared and the numerous parties that will become stakeholders of New LightSquared pursuant to the Plan will be disadvantaged by the delay, in terms of both the financial costs imposed thereby, as is more fully explained below, and the further delay to LightSquared's ability to conduct business in a competitive environment without being limited by the uncertainty and constraints of an ongoing bankruptcy.

The financial costs that LightSquared and New LightSquared would incur as a consequence of the *de facto* stay include the following:

1. While LightSquared remains in bankruptcy, interest is accreting on each of L2Inc's and L2LP's DIP loans at rates of 9%. Under the Plan, these DIP loan obligations – principal *and accrued interest* – will be repaid in full from the proceeds of the Working Capital Facility. (Plan, Art. IV, B.3(a)(i).) Thus, every additional dollar of DIP debt interest that accretes during the *de facto* 14 day stay pending appeal would reduce the working capital available to New LightSquared by the same amount.

2. Interest is accreting on L2LP's prepetition secured debt at a rate of 17%. The aggregate amount of this prepetition debt – principal *and accrued interest* – will be exchanged dollar-for-dollar for new debt of New LightSquared under the Second Lien Exit Facility. (Plan, Art. III, §§ B.7, B.8.) Here, too, every additional dollar of interest that accretes would increase the principal amount of New LightSquared's obligations under the Second Lien Exit Facility. And this increased debt burden would be further compounded as interest then accrues on that extra debt amount during the term of the Second Lien Exit Facility.

3. Preferred equity interests in L2LP and L2Inc are currently accreting at a rate of 9.75%. Under the Plan, L2LP preferred equity interests will be exchanged, on a fully accreted basis, dollar-for-dollar for new preferred equity interests in New LightSquared with a liquidation preference equal to the fully accreted value of the existing interests that are being exchanged. (Plan, Art. III, § 13.) Similarly, each dollar of additional accretion in

---

*Triple Net Invs. IX, LP v. DJK Residential, LLC (In re DJK Residential, LLC)*, No. 08-10375 (JMP), 2008 U.S. Dist. LEXIS 19801, at *5 (S.D.N.Y. Mar. 7, 2008) (Lynch, J.) (citing *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1992)). "[E]ach of the factors must be balanced" against the others, with the movant bearing the ultimate burden of establishing that, on balance, a stay is warranted. *N.Y. Skyline*, 520 B.R. at 4 n. 5, 5. Ahuja fails to address any of these factors and, in fact, expressly invites this Court to erroneously "avoid having to rule on [his] likelihood of success." (Ahuja Letter at 1.)

>L2Inc preferred equity interests increases the amount of preferred equity in New LightSquared that will be distributed to Reorganized LightSquared Inc. under the Plan. (Plan, Art. IV, § B.2(c)(ii).) As the new preferred equity interests of New LightSquared will be subject to mandatory redemption in cash at a future date, every additional dollar by which the existing preferred equity interests accrete during the *de facto* stay requested by Ahuja translates into a future cost to New LightSquared.

4. LightSquared would continue to incur professional fees and expenses relating to the bankruptcy, while essentially being compelled to sit on its hands and move no closer to exiting chapter 11.

Without putting too fine a point on it, assuming the *de facto* stay would begin to run on July 21, 2015, the aggregate cost to New LightSquared from the interest and preferred equity accretion alone would be approximately $22.4 million for the 14 days that Ahuja's proposal would prevent LightSquared from "taking further action to consummate the Plan." This figure could become higher still if the 14-day period occurred later and extended beyond to include the date (September 13, 2015) on which the commitment fee payable in relation to the exit financing increases.[2]

While it is LightSquared's position that the relief Ahuja requests in unwarranted, should the Court conclude otherwise, Ahuja should not be afforded such relief – which plainly would have adverse economic consequences for LightSquared – unless he posts a bond that would fully compensate LightSquared for the injury it will sustain. *See* Fed. R. Bankr. P. 8007(c). The default rule is that "the court should set a bond at or near the full amount of the potential harm to the non-moving parties." *ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 351 (S.D.N.Y. 2007) (Scheindlin, J.) "If the movant seeks the imposition of a stay without a bond, the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement." *Triple Net Invs. IX, LP v. DJK Residential, LLC (In re DJK Residential, LLC)*, No. 08-10375 (JMP), 2008 U.S. Dist. LEXIS 19801, at *6 (S.D.N.Y. Mar. 7, 2008) (Lynch, J.). The Ahuja Letter makes no effort at all to excuse the bond requirement, offering only the conclusory statement that approval of his request "will not injure LightSquared," (Ahuja Letter at 2), wrongly seeking to place *his* evidentiary burden with respect to irreparable injury upon LightSquared, and wholly ignores the fact that the key exit financing is being supplied by third party lenders, not the plan support parties. (*Id.*)

Ahuja's attempt to support his request by reference to *In re DBSD North Am*erica, Inc., No. 10-1175, ECF No. 222 (2d Cir. Oct. 5, 2010), does not work. In *DBSD*, judicial consideration of the

---

[2] The amount of the commitment fee increases, in staircase fashion, on specified dates as the committed funds remain undrawn. Were the *de facto* stay to extend beyond September 12, 2015, that would trigger a $7.5 million increase in the commitment fee. Additional increases will occur on October 13 and November 13, 2015.

notice and stay request, both at the district court and in the circuit, focused upon the imminent expiration of DBSD's exit financing. That exit financing was being supplied by the plan proponents, who would control DBSD upon consummation of the plan. The district court denied the stay because the exit financing was due to expire in 12 days, finding that there was "at least a cognizable risk that [the financing commitment] w[ould] not be extended" and "[i]f the commitment in fact does expire before the plan becomes effective, the entire restructuring may fall apart." *Sprint Nextel Corp. v. DBSD N. Am. Inc. (In re DBSD N. Am., Inc.)*, No. 09 Civ. 10156, 2010 U.S. Dist. LEXIS 44996, at *8 (S.D.N.Y. May 7, 2010) (Kaplan, J.).[3]

By the time DISH renewed its stay request before the Second Circuit, the facts on the ground had changed significantly. As indicated in DISH's filings in the Second Circuit, on May 18, 2010, just eleven days after Judge Kaplan's ruling, counsel for the plan proponents had represented to the district court that they were "unlikely" to withdraw their commitment, and by the time the Second Circuit ruled on the stay request, the lenders had in fact extended their exit financing commitment multiple times. *See In re DBSD North America, Inc.*, No. 10-1175, ECF No. 202-5, at 36:24-37:1, ECF No. 207-7 at ¶13 (2d Cir. Sept. 30, 2010). The Second Circuit's decision to grant a stay was thus prompted in large part, if not entirely, by its determination that, based on their conduct, the plan proponents would not allow their funding commitment to lapse.

Here, unlike in *DBSD*, the First Lien exit financing commitment and much of the Second Lien funding is from third parties that will have no relationship with New LightSquared except as lenders, and hence no incentive to extend their commitments. Additionally, the possibility of rising interest rates, widely predicted to follow expected action by the Federal Reserve Board at the end of 2015, suggests that LightSquared would have to pay more for any renegotiated exit financing that extends beyond the current deadline.

For these reasons, the Court should deny Ahuja's request or, alternatively, condition any grant upon a requirement that Ahuja post a bond in an amount not less than $24 million (a figure that includes the aforementioned costs stemming from interest and preferred equity accretion plus estimated restructuring related fees and expenses).

We submit, moreover, that Ahuja should be required to file a proper motion for a stay pending appeal and to comply with the procedural and substantive requirements pertaining thereto. *See* Fed. R. Bankr. P. 8007 (requiring stay request be made by motion); *see also* Fed. R. Bankr. P. 8028 (district courts cannot suspend requirements of Bankruptcy Rule 8007); Local Rule 7.1(d) (only non-dispositive requests can be brought by letter motion). The July 20, 2015 deadline for submission of replies to the FCC was known to Ahuja five weeks ago, giving him ample time to prepare a proper motion. Ahuja should not be allowed to require the Court and LightSquared to

---

[3]  Judge Kaplan also noted, "I am not so naïve as to believe that an extension of the financing commitment is not at least a possibility. Nor, however, am I so naïve as to assume that it inevitably will be extended." *Id.*

jump through hoops because he chose to wait until the eleventh hour to submit an inadequate letter on a Friday afternoon in July.

Respectfully,

Michael L. Hirschfeld

cc: Avery Samet, Esq.
ECF List