UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LIGHTSQUARED INC., *et al.*, | Case No. 12-12080 (SCC) |
| Debtors. | Jointly Administered |
| SANJIV AHUJA, | No. 15-cv-2342 (KBF) |
| Appellant, | |
| v. | |
| LIGHTSQUARED INC., *et al.*, | |
| Appellees. | |

**MEMORANDUM OF LAW IN SUPPORT OF APPELLANT
SANJIV AHUJA'S MOTION FOR STAY PENDING APPEAL**

Bijan Amini
Avery Samet
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Tel: (212) 490-4100

*Attorneys for Appellant Sanjiv Ahuja*

# **TABLE OF CONTENTS**

                                                                                                                                      **Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.       THE CONFIRMATION ORDER SHOULD BE STAYED PENDING APPEAL ............... 3

          A.       Ahuja Will Suffer Irreparable Harm Absent a Stay .................................................. 3

          B.       A Stay Will Not Cause Substantial Injury to Others ................................................ 6

          C.       Ahuja Has More than a "Mere Possibility" of Success on Appeal ........................... 7

                   1.       New Investors' Plan Treatment Does Not Comply with the Absolute Priority Rule ................................................................................................. 8

                   2.       The Bankruptcy Court's Determination No Absolute Priority Rule Analysis is Required Because Ahuja is Out of the Money is Incorrect ...... 10

          D.       A Stay Would be Consistent with the Public Interest ............................................. 10

II.      NO BOND IS NECESSARY AT THIS TIME ................................................................... 11

CONCLUSION ............................................................................................................................. 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

In re Adelphia Communications Corp.,
     361 B.R. 337 (S.D.N.Y. 2007)……………….…………………………3, 5, 7, 12, 13

In re Adv. Mining Sys., Inc.,
     173 B.R. 467 (S.D.N.Y. 1994)……………………………………………………..…5

In re Agency for Deposit Ins., Rehab., Bankr. and Liquidation of Banks,
     No. 03-9320, 2004 WL 414831 (S.D.N.Y. Mar. 4, 2004)………………………………...5

Babitt v. Vytautas Vebeliunas,
     No. 01-1108, 2002 WL 535503 (S.D.N.Y. Apr. 10, 2002)…………………………..........3

Bank of Am. Nat'l Trust and Sav. Assoc. v. 203 N. LaSalle St. P'ship,
     526 U.S. 434 (1999)…………………………………………………….………………8

In re BGI, Inc.,
     504 B.R. 754 (S.D.N.Y. 2014)………………………………………………………….5

Case v. L.A. Lumber Prods. Co.,
     308 U.S. 106 (1939)………………………………………………….......8, 10

In re Chateauguay Corp.,
     10 F.3d 944 (2d Cir. 1993)…………………………………………………………...5

In re Coltex Loop Central Three Partners, L.P.,
     138 F.3d 39 (2d Cir. 1998)……………………………………………………….8, 9, 13

In re Cont'l Airlines,
     91 F.3d 553 (3d Cir. 1996)………………………………………………………….13

In re Country Squire Assocs. of Carle Place, L.P.,
     203 B.R. 182 (B.A.P. 2d Cir. 1996)……………………………………..………….5, 7, 11

In re DBSD N. Am., Inc.,
     No. 09-10156, 2010 WL 1838630 (S.D.N.Y. May 7, 2010)………………...……………..5

In re DBSD N. Am., Inc.,
     634 F.3d 79 (2d Cir. 2011)……………………………………………………...8, 9, 11, 13

Fehlhaber v. Fehlhaber,
    664 F.2d 260 (11th Cir. 1981)……..………………………………………………....…...13

Hirschfeld v. Bd. of Elections,
    984 F.2d 35 (2d Cir. 1993)……………………………………………………….....…3, 7

Norwest Bank Worthington v. Ahlers,
    485 U.S. 197 (1988)………………………………………………………………………8

In re Phila. Newspapers,
    690 F.3d 161 (3d Cir. 2012)……………………………………………………………..13

Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.,
    507 U.S. 380 (1993)……………………………………………………………………...11

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson,
    390 U.S. 414, 453 (1968)……………………………………………………………….10

In re Sphere Holding Corp.,
    162 B.R. 639 (Bankr. E.D.N.Y. 1994)…………………………………………………...12

Texaco Inc. v. Pennzoil Co.,
    784 F.2d 1133 (2d Cir. 1986)……………………………………………………..………..5

Thapa v. Gonzalez,
    460 F.3d 323 (2d Cir. 2006)……………………………………………………………….7

**Statutes**

11 U.S.C. § 1101…………………………………………………………………………..4

11 U.S.C. § 1127…………………………………………………………………………..4

**Rules**

Fed. R. Bankr. P. 8005…………………………………………………………………..…1

Fed. R. Bankr. P. 8007…………………………………………………………………...1, 11

Fed. R. Bankr. P. 8017……………………………………………………………………….1

Fed. R. Bankr. P. 8025…………………………………………………………………...1, 11

Fed. R. Civ. P. 62(d)………………………………………………………………………..11

Appellant Sanjiv Ahuja ("Ahuja") files this memorandum of law in support of his motion for a stay of Bankruptcy Judge Shelley C. Chapman's March 27, 2015 order ("Confirmation Order") confirming the modified second amended joint chapter 11 plan (the "Plan") of appellees LightSquared Inc. and its debtor subsidiaries (together, "LightSquared") pending this Court's ruling on Ahuja's appeal and, if unsuccessful, Ahuja's appeal of the Confirmation Order to the Court of Appeals for the Second Circuit.[1]

## PRELIMINARY STATEMENT

This motion is filed in response to LightSquared's letters, dated July 17 and 20, 2015 [Docket No. 31 and 33], insisting that Ahuja file a formal motion to prevent LightSquared from moving immediately to consummate the Plan upon receipt of Federal Communications Commission ("FCC") approval of LightSquared's pending change of control application ("CoC Application"). If the Plan is consummated, LightSquared will undoubtedly argue for dismissal of Ahuja's appeal of the Confirmation Order on equitable mootness grounds. Ahuja therefore requests a stay pending appeal to maintain the status quo and prevent the possibility of his appeal being rendered moot.

The Plan is premised upon a December 15, 2015 effective date, and all calculations concerning the value of the claims against LightSquared and distributions to be made by it assume such effective date. As LightSquared argued below in support of its proposition the Plan could be confirmed without exit financing in place, "[u]nlike other chapter 11 cases where the effective date occurs relatively close to the confirmation date, the likely contemplated Effective Date in connection with the Plan is December 15, 2015 – approximately nine months away – and would require incurrence of significant fees given the length of time and amount of the

---

[1] The Confirmation Order is attached to Ahuja's notice of appeal [Docket No. 1]. The Plan is attached to the Confirmation Order as Ex. A.

commitments." Declaration of Avery Samet, filed contemporaneously herewith ("Samet Decl.") Ex. 1 (Confirmation Memorandum) at ¶179.[2] Nevertheless, the Plan also provides it can become effective before such time if all consummation conditions are satisfied or at the election of LightSquared and the New Investors (defined below). Plan § IX.C; Confirmation Order ¶40.

This Court held two conferences to determine the earliest possible date at which the Plan could become effective, and thus the earliest date by which Ahuja would need a stay of Plan consummation. LightSquared represented the Plan would not go effective before the FCC granted the CoC Application, which may be granted anytime after today, July 20, 2015.[3] Now that the comment period is expiring and the FCC may grant the CoC Application at any time, and now that LightSquared has rebuffed Ahuja's proposal for less intrusive protection, Ahuja moves for a stay pending appeal.[4]

---

[2] See also Samet Decl. Ex. 2 ("Disclosure Statement") at Ex. A (Plan Support Agreement or "PSA" § 4(a)(iii)) (providing for termination event if Plan is not consummated by December 15, 2015); Disclosure Statement at Ex. B (Treatment of Claims Chart).

[3] See also Samet Decl. Ex. 3 (FCC Notice Establishing Pleading Cycle on CoC Application); id. at Ex. 4 (6/4 Tr. [Hirschfeld] at 86:24-87:2-6) ("Your Honor, there has been a publication … The reply submissions … are due on July 20. It is at some point after that that the FCC would be in a position with respect to the change of control application").

[4] LightSquared's argument from its July 17, 2015 letter that Ahuja needlessly delayed seeking a stay pending appeal is meritless: the parties discussed the lack of need for a stay prior to the conclusion of the comment period on the CoC Application and the Court advised Ahuja not to move for a stay pending appeal while the matter was sub judice. See Samet Decl. Ex. 5 (4/7 Tr. at 5:21-6:4-6) (Court: "you don't need a stay since you've got these gating factors in place, correct?" Samet: "That's what we believe, Your Honor." Hirschfeld: "at this point … it may be a bit premature to get into the merits since the appellant is not seeking a stay"); id. [Court] at 10:24-11:2("If [FCC approval of the CoC Application] changes your view as to the necessity for moving for a stay, you'll do that"); 6/4 Tr. [Court] at 85:19-86:17 ("If … I were to rule against you, Mr. Samet, then I would assume you would take it to the Second Circuit. You would still have this period of time that is out there. So you would then move before the Second Circuit for a stay … Then if you move for a stay before me, I am going to tell you to wait, because that will require me to figure out if you have any likelihood in success of the merits that I am already in the process of deciding the appeal").

**ARGUMENT**

**I.    THE CONFIRMATION ORDER SHOULD BE STAYED PENDING APPEAL**

Ahuja requests a stay of the Confirmation Order pending this Court's decision on his appeal pursuant to Federal Rule of Bankruptcy Procedure (the "Rules") 8007 (formerly Rule 8005). In the event this Court affirms the Confirmation Order, Ahuja further requests a stay pending his appeal to the Second Circuit pursuant to Rule 8025 (formerly Rule 8017). In accordance with Rule 8007(b)(2)(B), Ahuja states his request for a stay from the Bankruptcy Court was denied without explanation.[5]

The standard for evaluating a stay pending appeal prior to entry of a decision on Ahuja's appeal pursuant to Rule 8007 or after such decision pursuant to Rule 8025 are identical. Specifically, this Court must consider the following four factors: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." In re Adelphia Communications Corp., 361 B.R. 337, 346 (S.D.N.Y. 2007) (evaluating stay request under former Rule 8005); Babitt v. Vytautas Vebeliunas, No. 01-1108, 2002 WL 535503 (S.D.N.Y. Apr. 10, 2002) (evaluating stay request under former Rule 8017). See generally Hirschfeld v. Bd. of Elections, 984 F.2d 35, 39 (2d Cir. 1993).

   **A.    Ahuja Will Suffer Irreparable Harm Absent a Stay**

The Plan includes 14 conditions to consummation, 4 of which are relevant to Ahuja's motion: (1) the Confirmation Order must be a "Final Order" (i.e., not subject to appeal); (3) LightSquared must have closed on its exit financing facilities; (3) the FCC must approve the

---

[5] 3/26 Tr. [Court] at 164:1-9, attached to Ahuja's April 7, 2015 letter [Docket No. 5] ("I'm denying your [Ahuja's] motion for a stay").

3

CoC Application; (4) the PSA among LightSquared, the entities denominated "New Investors" under the Plan (Harbinger Capital Partners, LLC ("Harbinger"), Fortress Credit Opportunities Advisors LLC, Centerbridge Partners, L.P., and SIG Holdings, Inc.), and certain other parties must be in effect. Plan § IX.B.1, 6, 10-11; Confirmation Order ¶39.a, f, j-k.  As noted above, pursuant to Plan § IX.C and Confirmation Order ¶40, these conditions may be waived by LightSquared and the New Investors without notice to Ahuja or any court.  In addition, pursuant to PSA § 4(a)(iii) the PSA parties may terminate the PSA if the Plan is not consummated by December 15, 2015.

As discussed at the April 7, 2015 hearing, absent a stay, upon FCC approval of the CoC Application, LightSquared likely will seek a waiver from the New Investors of the Plan consummation condition that the Confirmation Order be a "Final Order," cause the Plan to become effective, and thereafter argue this appeal is moot.[6] Specifically, LightSquared would argue Plan consummation would moot this appeal because it would result in cancellation of Ahuja's common equity and distribution of common equity in reorganized LightSquared LP ("New LightSquared") to the New Investors, Plan §§ III.B.6, III.B.16, IV.B.2.(b)-(d), IV.K and Confirmation Order ¶22, and prevent confirmation of a substitute plan pursuant to section 1127(b) of title 11 of the United States Code (the "Bankruptcy Code"), which precludes plan modification upon "substantial consummation" of the same.[7]

---

[6] 4/7 Tr. [Court, Samet] at 4:7-16) (sole "gating factor" preventing Plan consummation is FCC approval of the COC Application, after which the Plan may become effective).

[7] Bankruptcy Code section 1101(2) defines "substantial consummation" as "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor … of the business or of the management of all or substantially all property dealt with by the plan; and (C) commencement of distribution under the plan." See also 4/7 Tr. [Hirschfeld] at 6:7-12) ("In terms of when there may be an equitable mootness issue, I think Section 1101 of the Bankruptcy Code says when that happens").

Ahuja disputes and reserves all rights with respect to mootness arguments.[8] Nevertheless, loss of appellate rights is a "quintessential form of prejudice." In re Country Squire Assocs. of Carle Place, L.P., 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996). Ahuja's appeal of the Confirmation Order to this Court, and failing that, the Second Circuit, is his only recourse and its dismissal on mootness grounds would leave Ahuja with nothing. That is the essence of irreparable harm. See, e.g., Adelphia, 361 B.R. at 347 (irreparable harm exists "where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error") (emphasis in original); In re BGI, Inc., 504 B.R. 754, 763 (S.D.N.Y. 2014) (same); In re DBSD N. Am., Inc., No. 09-10156, 2010 WL 1838630, at *1 (S.D.N.Y. May 7, 2010) (same); In re Adv. Mining Sys., Inc., 173 B.R. 467, 469 (S.D.N.Y. 1994) ("denial of a stay would moot the appeal and deny the Affiliates any recovery. That is a quintessential form of prejudice to the Affiliates").

A key concern warranting a stay is whether, absent a stay, the appellant "can be restored to the status quo ante if the appeal should result in a reversal in his favor. The irreparability of the harm increases in proportion to its irreversibility." Texaco Inc. v. Pennzoil Co., 784 F.2d 1133, 1153 (2d Cir. 1986), rev'd on other grounds, 481 U.S. 1 (1987); In re Agency for Deposit Ins., Rehab., Bankr. and Liquidation of Banks, No. 03-9320, 2004 WL 414831, at *3 (S.D.N.Y. Mar. 4, 2004) (granting stay pending appeal because other party would be "severely, and quite possibly irretrievably, harmed, by a premature distribution … that will not readily be compensable without substantial litigation, if at all").

---

[8] See In re Chateauguay Corp., 10 F.3d 944, 952-53 (2d Cir. 1993) (citations omitted) ("substantial consummation will not moot an appeal if … the following circumstances exist: (a) the court can still order some effective relief … (b) such relief will not affect 'the re-emergence of the debtor as a revitalized corporate entity' … (c) such relief will not unravel [the plan] (d) the 'parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings' … and (e) the appellant 'pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order'").

Here, Plan consummation before a final decision on the merits of Ahuja's appeal would alter the status quo, cancel Ahuja's LightSquared Inc. common equity for no consideration, and redistribute value to the New Investors that should have gone to him and potentially moot his appeal.

### B.  A Stay Will Not Cause Substantial Injury to Others

A stay will not cause substantial injury to LightSquared or any other party. LightSquared is not on the verge of running out of cash. According to its most recent operating report, it has more than $208 million in cash on hand. Samet Decl. Ex. 6. Further, there is no evidence LightSquared's value would be adversely impacted by a stay pending appeal. In fact, in overruling an objection filed postconfirmation by SP Special Opportunities LLC ("SPSO") to LightSquared's use of its cash collateral, the Bankruptcy Court found LightSquared's remaining in bankruptcy would not pose a material risk of diminution in value of its spectrum assets, based on Auction 97's results and valuation evidence relied on by LightSquared at confirmation. Samet Decl. Ex. 7 (4/7 Tr. [Court] at 22:12-23:16). In addition, there is no evidence any PSA party would withdraw its support for the Plan or that the New Investors would not agree to waive the Plan consummation condition that the PSA remain in effect if the Confirmation Order were stayed beyond December 15, 2015. At a minimum, no PSA party can possibly claim harm up to the end date they agreed upon in the first instance, December 15, 2015. Accordingly, there is no reason not to stay the Order at least until such date.

LightSquared argues in its July 17, 2015 letter it will incur additional interest costs and professional fees of approximately $1.7 million per day and commitment fees to the extent a stay pending appeal prevents Plan consummation. However, LightSquared's claim of loss is

6

materially overstated.[9]  LightSquared's argument also underscores the Bankruptcy Court's legal error: it is not LightSquared's creditors who would bear the cost of any such expenses, but the New Investors, as LightSquared is solvent and creditors are being paid in full under its Plan. Accordingly, as a practical matter LightSquared is arguing no stay should be granted to avoid a reduction in the very equity cushion which the Bankruptcy Court stated does not exist for absolute priority rule purposes.

### C. Ahuja Has More than a "Mere Possibility" of Success on Appeal

A movant seeking a stay does not need to show a probability of success on the merits; instead, where a "serious legal question" is involved, the movant "need only present a substantial case on the merits." Adelphia, 361 B.R. at 349.  A substantial case on the merits is shown where there is more than a "mere possibility" of a successful appeal.  Country Squire, 203 B.R. at 184 (citing Hirschfeld, 984 F.2d at 39) ("[T]he movant must show that there is more than a mere possibility of a successful appeal.  Hirschfeld prescribes an intermediate level between possible and probable which is intended to eliminate frivolous appeals").  Moreover, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay.  Simply stated, more of one excuses less of the other."  Thapa v. Gonzalez, 460 F.3d 323, 335 (2d Cir. 2006).

---

[9] LightSquared's claim of loss ($22.4 million over 14 days) is overstated because it is calculated by adding up accrued interest under existing debt instruments without specifying the extent to which it is offset by interest that would otherwise accrue under its exit financing. For example, the Working Capital Facility (as defined in the Plan) has an effective interest rate of at least 10.55%, after accounting for stated interest, original issue discount, and commitment fees, over 150 bps higher than the 9% interest on LightSquared's postpetition loans.  In addition, under the Plan LightSquared preferred equity carrying 9.75% interest will be exchanged dollar-for-dollar for New LightSquared preferred equity carrying at least 12% interest. LightSquared states in its July 20, 2015 letter these interest rate differences are immaterial because a delay in consummation will result in reduced availability under its exit facilities post-consummation.  However, as noted below, any reduction in availability will not actually impact creditor recoveries because LightSquared is solvent.

Ahuja's appeal involves serious legal questions concerning the application of the absolute priority rule, equal treatment of class members, and good faith. Most crucially, Ahuja contends under DBSD and Coltex Loop – two Second Circuit decisions interpreting Supreme Court precedent in Bank of Am. Nat'l Trust and Sav. Assoc. v. 203 N. LaSalle St. P'ship, 526 U.S. 434 (1999), Norwest Bank Worthington v. Ahlers, 485 U.S. 197 (1988), and Case v. L.A. Lumber Prods. Co., 308 U.S. 106 (1939) – the Bankruptcy Court was required to examine the contributions allegedly justifying distributions to the New Investors and to evaluate the value of such distributions. Ahuja contends that had the Bankruptcy Court applied this precedent, it should have denied confirmation of the Plan.

Mindful of the Court's directive to not re-brief the merits while the appeal is sub judice, the basis for Ahuja's appeal is briefly summarized below and is not intended to limit Ahuja's arguments on appeal.

        1.      New Investors' Plan Treatment Does Not Comply with the Absolute Priority Rule

Second Circuit precedent requires scrutiny of cramdown plans where old equity receives a distribution allegedly on account of a new contribution. In re DBSD N. Am., Inc., 634 F.3d 79, 100 (2d Cir. 2011) (reversing plan confirmation where old equity received a distribution at the expense of unsecured creditors, in exchange for its continued cooperation and assistance in the reorganization); In re Coltex Loop Central Three Partners, L.P., 138 F.3d 39, 46 (2d Cir. 1998) (reversing plan confirmation where old equity received a distribution at the expense of a secured creditor, in exchange for $2.5 million in new financing). The Second Circuit has directed that this scrutiny is required even where a plan describes the distribution to old equity as something else, DBSD (gift from secured creditors) and even where old equity is providing a new capital

8

infusion, Coltex Loop (cash infusion in same amount as reorganized debtor's valuation as determined by the bankruptcy court).

Here, the Plan on its face recites that Harbinger (and the other New Investors) are receiving distributions, in part, on account of new contributions. In addition, the trial testimony indicated Harbinger was receiving $122 million in New LightSquared preferred equity solely on account of its contribution of shareholder litigations. Therefore, the Bankruptcy Court should have examined, inter alia, the value Harbinger was receiving under the Plan, whether that value could have been obtained by Harbinger had it not been a shareholder and whether the other tests set forth by the Second Circuit had been met.

A simple comparison of the value of Harbinger's claim ($228 million) and Plan contribution (shareholder litigations, ascribed a value of $122 million at mediation) with the property Harbinger is to receive under the Plan ($350 million in New LightSquared preferred equity plus 44.45% of New LightSquared common equity) reveals as much. That LightSquared's director believed a legitimate economic reason existed for paying Harbinger for its litigations (reducing "overhang") does not justify absolute priority rule noncompliance. DBSD, 634 F.3d at 96 (quoting Coltex Loop, 138 F.3d at 43) ("notwithstanding the various economic reasons that may have contributed to the decision to award property to old equity," the plan cannot be confirmed where "it is clear" upon examination old equity is receiving property "on account of" its prior, junior interest").

The Bankruptcy Court also failed to examine if Harbinger's litigations are new value under the absolute priority rule's new value exception, made applicable because Harbinger is retaining half its interests under the Plan, and it is apparent they are not. Coltex Loop, 138 F.3d at 44-46. Under the new value exception, old equity may receive property under a cramdown

9

plan if its plan contribution is (1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization, <u>and</u> (5) reasonably equivalent to the value of property being received. <u>Id.</u> at 41. Harbinger's litigations are not money or money's worth – they are shareholder litigations; the value of property Harbinger will receive on account of the same far exceeds the value assigned to them at mediation <u>before</u> dismissal of three of the four litigations; and there is no evidence they are "necessary" to LightSquared's reorganization. <u>Id.</u> at 45 (quoting <u>L.A. Lumber</u>, 308 U.S. at 121) ("the Supreme Court took pains to 'stress' that old equity participation would be 'necessary' only where the success of the reorganization hinged on" the new value; no evidence was offered on their necessity); <u>L.A. Lumber</u>, 308 U.S. at 129-30 (litigations are not new value).

That Harbinger is taking this excess property at Ahuja's expense violates the absolute priority rule, the rule governing equal treatment of class members, and the Bankruptcy Court-approved agreement between Harbinger and Ahuja.

> 2. <u>The Bankruptcy Court's Determination No Absolute Priority Rule Analysis is Required Because Ahuja is Out of the Money is Incorrect</u>

Ahuja also appeals from the Bankruptcy Court's failure to follow the legal requirements for evaluating a Plan for absolute priority rule purposes, where LightSquared and Ahuja were in agreement LightSquared's valuation exceeded the value of claims against it, where the Bankruptcy Court unqualifiedly endorsed this valuation, and where the Bankruptcy Court disparaged countervailing evidence.

The Bankruptcy Court erred as a matter of law when it (1) imposed on Ahuja the burden of establishing the existence of an equity cushion; (2) imposed on Ahuja a "certain" or "definite" standard in valuating LightSquared's assets contrary to <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson</u>, 390 U.S. 414, 453 (1968); (3) issued

inconsistent findings of fact concerning the value of LightSquared's assets using the alternative spectrum use approach; and (4) used LightSquared Inc.'s pre-reorganization value (its value absent the reorganization contemplated by the Plan), and not the going concern value of the reorganized debtor, to determine if the absolute priority rule was violated.

### D. A Stay Would be Consistent with the Public Interest

In DBSD the Second Circuit concluded parties cannot circumvent the strictures of the absolute priority rule by gifting property under a plan. This appeal concerns whether the absolute priority rule may be circumvented via a negotiated plan settlement, and therefore has major implications for the absolute priority rule, its corollary no creditor may be paid more than in full, and the new value exception, which affect all chapter 11 cases in which confirmation of a cramdown plan is sought. See also Country Squire, 203 B.R. at 183 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 389 (1993)) ("The Supreme Court has stated … 'bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization' … Acknowledging that goal and having concluded that this is not a frivolous appeal, no adverse public interest will be implicated by a [stay] order").

### II. NO BOND IS NECESSARY AT THIS TIME

Unlike under Federal Rule of Civil Procedure 62(d), an appeal bond in bankruptcy appeals is discretionary. Compare Rule 8007(c) ("The district court … may condition relief on filing a bond or other appropriate security with the bankruptcy court") with Fed. R. Civ. P. 62(d) ("If an appeal is taken, the appellant may obtain a stay by supersedeas bond … The stay takes effect when the court approves the bond"). Similarly, under Rule 8025 after expiration of the stay of a district court's affirmance of a bankruptcy court order, whether or not to require a bond as a condition of stay pending appeal is left to the discretion of the district court.

11

An appeal bond's purpose is "to protect 'against diminution in the value of property pending appeal' and to 'secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal.'" Adelphia, 361 B.R. at 350 (quoting In re Sphere Holding Corp., 162 B.R. 639, 644 (Bankr. E.D.N.Y. 1994)).

LightSquared argues a bond is necessary to protect against accrual of interest on its pre- and postpetition loans and preferred equity, professional fees, and commitment fees. Significantly, LightSquared does not argue Plan consummation and the replacement of such loans and preferred equity with exit financing and New LightSquared preferred equity will provide for a greater recovery to LightSquared's creditors or cause New LightSquared to increase its absolute indebtedness. Instead, LightSquared argues any dollar spent paying additional interest on prepetition claims will reduce future availability.

However, this argument does not support imposition of a nearly $2 million per day bond for several reasons:

First, until the FCC approves the CoC Application there can be no risk of additional loss to LightSquared.

Second, even after the FCC approves the CoC Application, LightSquared still needs to close on its exit financing before the Plan can be consummated. Specifically, Working Capital Facility Credit Agreement § 5.16 provides LightSquared has ten business days to use commercially reasonable efforts to close upon receipt of FCC approval of the CoC Application. Samet Decl. Ex. 8. Similarly, Second Lien Exit Facility Credit Agreement § 4.01(l) provides FCC approval of the CoC Approval must be received as a condition to the agreement's effectiveness. Id. Ex. 9.

Third, the potential and marginal diminution in availability under exit financing facilities to New LightSquared does not justify imposition of a dollar-for-dollar bond where New LightSquared will continue to accrue at least as much interest as LightSquared did pre-consummation.[10]

Fourth, the New Investors, all of whom are sophisticated, negotiated and agreed to a Plan that pays creditors in full notwithstanding the fact that it may be consummated as late as December 15, 2015.

Fifth, conditioning a stay upon an individual posting a nearly $2 million per day bond runs the risk of foreclosing Ahuja's appellate rights entirely. To do so in the context of an appeal of an inequitable cramdown of LightSquared Inc. common equity is essentially an invitation for debtors to aggressively cramdown junior stakeholders in the hopes of foreclosing appellate review. Notably, no bond was required for the stay issued in the DBSD, 634 F.3d at 88 or Coltex Loop, No. 96-29 (S.D.N.Y. July 19, 1996) [Docket No. 9].[11]

To the extent the Court determines a bond to be appropriate following FCC approval of the CoC Application, Ahuja submits no bond should be set absent a record supporting a judicial finding of harm in a quantified amount,[12] and that Plan consummation should nevertheless be

---

[10] The instant case is wholly distinguishable from Adelphia, where the district court directed that appellants post a massive appeal bond because a stay would result in appellees having to sell one-third of their Time Warner stock in a public offering. See 361 B.R. at 353 (estimating total harm from an IPO during a stay pending appeal at $715 million).

[11] Indeed, judges have cautioned against judicial decision that may be "used as a weapon to prevent any appellate review of bankruptcy court orders confirming reorganization plans." In re Phila. Newspapers, 690 F.3d 161, 170 n.12 (3d Cir. 2012) (Ambro, J., dissenting). See also In re Cont'l Airlines, 91 F.3d 553, 568-71 (3d Cir. 1996) (Alito, J., dissenting) (courts should fashion procedures to protect stakeholders' right to appellate review). Conditioning a stay of plan consummation on an individual posting a nearly $2 million per day bond would have just this result.

[12] See, e.g., Fehlhaber v. Fehlhaber, 664 F.2d 260, 262 (11th Cir. 1981) (appeal bond determined after evidentiary hearing); In re Anderson Pipeline Co., 78 B.R. 603 (D. Col. 1987) (directing that evidentiary hearing be conducted to determine the amount of appeal bond based upon findings of fact concerning losses which may be expected from delay in plan consummation as a result of stay pending appeal).

stayed for at least 14 days following FCC approval of the CoC Application without Ahuja having to post a bond, which is at least as long as LightSquared gave itself to close on its exit facilities following FCC approval of the CoC Application.

## **CONCLUSION**

Ahuja respectfully requests a stay of the Confirmation Order pending this Court's ruling on Ahuja's appeal and, if unsuccessful, Ahuja's appeal of the Confirmation Order to the Second Circuit.

Dated: July 20, 2015  
      New York, New York

STORCH AMINI & MUNVES PC

By: /s/ Avery Samet

Bijan Amini  
Avery Samet  
Jeffrey Chubak  
2 Grand Central Tower, 25th Floor  
140 East 45th Street  
New York, New York 10017  
(212) 490-4100

*Attorneys for Appellant Sanjiv Ahuja*