UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LIGHTSQUARED INC., *et al.*, | Case No. 12-12080 (SCC) |
| Debtors. | Jointly Administered |
| SANJIV AHUJA, | No. 15-cv-2342 (KBF) |
| Appellant, | |
| v. | |
| LIGHTSQUARED INC., *et al.*, | |
| Appellees. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF APPELLANT
SANJIV AHUJA'S MOTION FOR STAY PENDING APPEAL**

Bijan Amini
Avery Samet
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Tel: (212) 490-4100

*Attorneys for Appellant Sanjiv Ahuja*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 3 |
| I. | THE CONFIRMATION ORDER SHOULD BE STAYED PENDING APPEAL | 3 |
| | A. Ahuja Faces the Threat of Irreparable Harm and has More than a "Mere Possibility" of Success | 3 |
| | B. A Stay to December 15, 2015 Will Not Cause Substantial Injury | 5 |
| | C. A Stay Would be Consistent with the Public Interest | 5 |
| II. | NO BOND IS NECESSARY AT THIS TIME | 6 |
| | A. Reduced Exit Facility Availability Does Not Justify a Bond | 6 |
| | B. LightSquared's Budgeted Professional Fees Do Not Support a Bond | 9 |
| | C. Factors Weighing Against a Bond | 10 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                             **Pages(s)**

*Bosley v. WildWetT.com*,
   310 F. Supp. 2d 914 (N.D. Ohio 2004) ............................................................................. 8

*Cal. v. Tahoe Regional Planning Agency*,
   330 B.R. 93 (S.D.N.Y. 2005) .......................................................................................... 10

*Case v. L.A. Lumber Prods. Co.*,
   308 U.S. 106 (1939) ......................................................................................................... 6

*Continuum Co., Inc. v. Incepts, Inc.*,
   873 F.2d 803 (5th Cir. 1989) ......................................................................................... 10

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ...................................................................................... 10

*In re Adelphia Commc'ns Corp.*,
   361 B.R. 337 (Bankr. S.D.N.Y. 2007) ................................................................... passim

*In re BGI, Inc.*,
   504 B.R. 754 (S.D.N.Y. 2014) ........................................................................................ 5

*In re Calpine Corp.*,
   No. 05-60200, 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) .......................... 8, 9

*In re Charter Commc'ns, Inc.*,
   691 F.3d 476 (2d Cir. 2012) ............................................................................................ 4

*In re Chateaugay Corp.*,
   10 F.3d 944 (2d Cir. 1993) .............................................................................................. 4

*In re Chemtura Corp.*,
   No. 09-11233, 2010 WL 4638898 (Bankr. S.D.N.Y. Nov. 8, 2010) ............................. 5

*In re Coltex Loop Central Three Partners, L.P.*,
   No. 96-29 (S.D.N.Y. July 19, 1996) ............................................................................. 10

*In re DBSD N.A., Inc.*,
   634 F.3d 79 (2d Cir. 2011) .................................................................................. 5, 6, 10

*In re Friedman*,
 No. 07-2135, 2011 WL 1193470 (Bankr. D. Ariz. March 29, 2011) ............................................6

*In re General Motors Corp.*,
 409 B.R. 24 (Bankr. S.D.N.Y. 2009) ..........................................................................................5

*In re Lambert Oil Co.*,
 375 B.R. 197 (W.D. Va. 2007) .................................................................................................10

*In re Metromedia Fiber Network, Inc.*,
 416 F.3d 136 (2d Cir. 2005)........................................................................................................4

*In re One2One Commc'ns, LLC*,
 No. 13-3410, 2015 WL 4430302 (3d Cir. July 21, 2015)........................................................1, 4

*In re President Casinos, Inc.*,
 360 B.R. 262 (B.A.P. 8th Cir. 2007)...........................................................................................8

*In re Sphere Holding Corp.*,
 162 B.R. 639 (E.D.N.Y. 1994) ...................................................................................................7

*In re Suprema Spec., Inc.*,
 330 B.R. 93 (S.D.N.Y. 2005)......................................................................................................7

*In re Tribune Co.*,
 477 B.R. 465 (D. Del.2012).....................................................................................................5, 7

*Kansas City Terminal Ry. Co. v. Central Union Trust Co. of N.Y.*,
 271 U.S. 445 (1926)....................................................................................................................6

*Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*,
 702 F. Supp. 60 (S.D.N.Y. 1988)................................................................................................7

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
 464 F. Supp. 2d 206 (S.D.N.Y. 2006).......................................................................................10

*Simon Prop. Group, Inc. v. Taubman Ctrs., Inc.*,
 262 F. Supp. 2d 794 (E.D. Mich. 2003)......................................................................................8

*Texaco Inc. v. Penzoil Co.*,
 784 F.2d 1133 (2d Cir. 1986)......................................................................................................7

Appellant Sanjiv Ahuja ("Ahuja") files this reply memorandum in further support of his motion for a stay of the Bankruptcy Court's March 27, 2015 Order ("Confirmation Order") confirming the chapter 11 plan ("Plan") of appellees LightSquared Inc., et al. ("LightSquared") pending this Court's ruling on Ahuja's appeal and, if unsuccessful, Ahuja's appeal of the Confirmation Order to the Second Circuit. Ahuja hereby limits his request to a stay of the Confirmation Order (a) to December 15, 2015, without prejudice to his right to seek renewal of such stay, or alternatively (b) to that portion of the Plan that provides for the distribution of the equity to which Ahuja would be entitled if he prevails on this appeal.

## PRELIMINARY STATEMENT

"Once a bankruptcy appeal has been filed, federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred on them." In re One2One Commc'ns, LLC, -- F.3d --, No. 13-3410, 2015 WL 4430302, at *3 (3d Cir. July 21, 2015). "The ability to review decisions of the lower courts is the guarantee of accountability in our judicial system." In re Adelphia Commc'ns Corp., 361 B.R. 337, 342 (S.D.N.Y. 2007).

The Plan was proposed by LightSquared and three entities who agreed to divide up "New LightSquared" common equity amongst themselves and another party (the "New Investors"). At the heart of this appeal is the fact that the New Investors will receive more than what they are entitled to on account of their claims and Plan contributions. In particular, Harbinger Capital Partners, LLC ("Harbinger"), the existing 90% shareholder, is retaining one half of its shares plus $122 million in preferred stock with a 13.5% rate of return, in contravention of Second Circuit and Supreme Court decisions mandating rigorous scrutiny of such deals, if not their outright prohibition. The Bankruptcy Court, an Article I tribunal, in a decision read from the bench an hour after oral argument and a day after the filing of Ahuja's brief, declined to measure the value that Plan proponents, including Harbinger, are giving and receiving in exchange for

New LightSquared common equity despite precedent requiring it do so. The Bankruptcy Court accepted LightSquared's and the Plan proponents' expert and fact testimony regarding the existence of billions of dollars in equity value when it approved the Plan's valuation premise, but rejected Ahuja's reliance on the same evidence, and imposed on Ahuja the burden of establishing the existence of an equity cushion with "requisite certainty" so that it could make a "definitive finding."

On appeal, LightSquared raises two defenses of the Bankruptcy Court's decision, neither of which can be found in the decision itself. First, LightSquared argues the Bankruptcy Court determined Harbinger's receipt of New LightSquared preferred equity in an amount equal to the value of its subordinated claim against LightSquared Inc. was insufficient compensation for its claim, justifying the additional payment of $122 million in New LightSquared preferred equity plus 45% of New LightSquared common equity (i.e., Harbinger's distribution was solely on account of its claim and not in any way because of its status as LightSquared's 90% owner). The decision contains no such determination; and the Bankruptcy Court's failure to conduct this analysis violates applicable precedent. Second, LightSquared argues the Bankruptcy Court's decision can be justified by the Supreme Court's decision in Consolidated Rock Prods. Co. v. Du Bois, 312 U.S. 510 (1941), a decision which actually leads to the opposite conclusion.

Thus, this appeal raises serious legal questions for which Ahuja is entitled to appellate review by an Article III court. Now that Federal Communications Commission ("FCC") approval of LightSquared's change of control application ("CoC Application") may occur at any time, Ahuja must move this Court for a stay to prevent his appeal from being mooted because the Second Circuit has cautioned bankruptcy appellants that their appeal may be equitably mooted if they fail to proceed with diligence to obtain a stay pending appeal. Ahuja submits that even if the Plan were consummated, an appellate court can still fashion appropriate relief if it is

2

determined a Plan proponent was not entitled to receive New LightSquared common equity and must share such equity with Ahuja.

Finally, LightSquared seeks to insulate Plan confirmation from appeal through imposition of a massive bond. First, no bond is necessary if this Court simply stays distribution the equity to which Ahuja is entitled. Second, no bond is necessary before December 15, 2015, because LightSquared's creditors will not suffer harm if the Plan does not become effective before then. The Plan provides creditors will receive payment in full plus interest through the effective date and bars the Plan's proponents from backing out before then. That such proponents, as New LightSquared's owners, might have marginally less working capital upon Plan consummation is not harm the discretionary bond requirement is designed to address. Moreover, any dispute over New LightSquared's going concern value starkly illustrates the inherent contradictions of LightSquared's arguments on the merits: at trial (in sworn testimony, no less), the Plan proponents took the position that New LightSquared would have a massive equity cushion sufficient to withstand unforeseen shocks; on appeal, the Plan proponents realized their position demonstrated that the Plan violated the "fair and equitable" provisions of the Bankruptcy Code, so they next argued that the equity cushion's existence is far from certain.[1] On this motion for a stay, caught between their two conflicting positions, LightSquared now argues a stay would unfairly reduce the same equity cushion (whatever its size) by hundreds of millions of dollars.

**ARGUMENT**

**I.   THE CONFIRMATION ORDER SHOULD BE STAYED PENDING APPEAL**

    **A.   Ahuja Faces the Threat of Irreparable Harm and has More than a "Mere Possibility" of Success**

Under current Second Circuit law, once a plan has been substantially consummated an

---

[1] See, e.g., 6/4 Tr. at 37:9-14 (Counsel: "What is the common stock worth? Zero. It is a bet. That's all it is."), attached as Ex. 1 to the Declaration of Avery Samet, filed contemporaneously herewith ("Samet Decl.").

3

appeal is presumed to be moot. This presumption can only be rebutted if all five factors identified in Chateaugay have been met, including whether the appellant diligently sought a stay.[2] In fact, in In re Metromedia Fiber Network, Inc., 416 F.3d 136, 145 (2d Cir. 2005), the Second Circuit all but instructed bankruptcy appellants to seek a stay to prevent the mooting of their respective appeals.[3]

Under the Third Circuit's decision of three days ago in One2One (and particularly given the concurring opinion by Judge Krause raising serious Constitutional concerns with the entire doctrine of equitable mootness), Ahuja would likely not require a stay. However, the threat of mootness under current Second Circuit law compels Ahuja to seek this stay. That is a real and existing threat that warrants imposition of a stay under Second Circuit law.

Nevertheless, Ahuja is not attempting to be coy. Ahuja does not oppose LightSquared's efforts to reorganize, just his treatment under the Plan. Under current Second Circuit law, a court could fashion relief if it determines that the four sponsors received too much under the Plan at the expense of Ahuja.[4] For example, a remedy directing a portion of the New LightSquared equity to be transferred to Ahuja would have no impact on the operations, financial or otherwise,

---

[2] See In re Chateauguay Corp., 10 F.3d 944, 952-53 (2d Cir. 1993) (citations omitted) ("substantial consummation will not moot an appeal if … the following circumstances exist: (a) the court can still order some effective relief … (b) such relief will not affect 'the re-emergence of the debtor as a revitalized corporate entity' … (c) such relief will not unravel [the plan] (d) the 'parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings' … and (e) the appellant 'pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order'").

[3] Compounding the difficulty, one court in this district found that an appellant who sought a stay was later judicially estopped from arguing against mootness. Even though, in Adelphia, the ad hoc bondholder group that sought a stay was likely capable of posting the $1.3 billion bond required as a condition for a stay, the group chose not to do so. In re Adelphia Commc'ns Corp., 367 B.R. 84, 89 (S.D.N.Y. 2007). Moreover, in Adelphia the Second Circuit authorized the group to return to the district court to seek a modification of the bond amount to demonstrate group members were unable (and not unwilling) to post such a bond. Id. Again, they did not take that route. Id. The Adelphia court also had grave concerns regarding the group's "cynical and unprincipled" behavior. Id. at 93, n.33. Even with these unusual facts, after ruling that the group was judicially estopped from arguing their appeal was not equitably moot, the district court went on to rule on the merits of the equitable mootness argument based on its analysis of the Chateaugay factors. Id. at 93-94.

[4] See In re Charter Commc'ns, Inc., 691 F.3d 476, 482 (2d Cir. 2012) ("Nor is a claim automatically equitably moot if the relief requested would require that a confirmed plan be altered. In this regard, we disagree with the district court's overly broad statement that invalidating a plan and remanding for negotiation renders a request 'per se equitably moot'").

4

of New LightSquared, nor would it affect the distributions received by any creditor or preferred equity holder. The only difference will be the closely-held corporation will have a new shareholder who, if the appeal is successful, should have been a shareholder the entire time.

LightSquared cites Adelphia for the proposition that in 2007 the majority rule was that the risk of equitable mootness does not by itself constitute irreparable harm. (Opp. Br. at 7). Contrary to LightSquared's unsupported suggestion, "modern" cases do not uniformly reach this result,[5] and, in fact, neither did Adelphia. Adelphia, 361 B.R. at 347 n.40, 348 (finding the significant risk of mootness to be irreparable harm and listing numerous cases). In addition, LightSquared argues Ahuja's claims of error are not "significant" enough. LightSquared has not offered a single new argument explaining why Ahuja should not prevail on the merits, and Ahuja will not rehash his prior merits-based arguments here.

### B. A Stay to December 15, 2015 Will Not Cause Substantial Injury

LightSquared's arguments a stay for the period at issue will result in harm is meritless for reasons described in Section II.A-B, infra.[6] Further, the alternative relief sought by Ahuja—a stay of distribution of a portion of the new equity—will result in no injury whatsoever.

### C. A Stay Would be Consistent with the Public Interest

LightSquared argues the public interest in favor of proper application of the absolute priority rule is outweighed by broad support for the Plan and the FCC's National Broadband Plan (released March 2010). Notably, the Second Circuit did not consider these reasons sufficient to justify denying a stay pending appeal in In re DBSD N. Am., Inc., even though DBSD, like

---

[5] See In re Tribune Co., 477 B.R. 465, 476-77 (D. Del. 2012) (finding irreparable harm based on possibility of mootness); In re BGI, Inc., 504 B.R. 754, 763 (S.D.N.Y. 2014) (quoting Adelphia for same proposition); In re Chemtura Corp., No. 09-11233, 2010 WL 4638898, at *5 (Bankr. S.D.N.Y. Nov. 8, 2010) (citing In re General Motors Corp., 409 B.R. 24, 31 (Bankr. S.D.N.Y. 2009)) ("In GM, I held … the threat of equitable mootness was enough to satisfy the requirement of showing … irreparable injury").

[6] LightSquared's argument that a stay would threaten to derail exit financing is not presently at issue since Ahuja is only seeking a stay to December 15, 2015 or a stay of the distribution that portion of the equity to which he is entitled.

5

LightSquared, was developing terrestrial mobile communications systems using its spectrum assets and the commencement of DBSD's appeal post-dated the release of the FCC's National Broadband Plan. 634 F.3d 79, 87 (2d Cir. 2011). Finally, LightSquared's suggestion that proper application of the absolute priority rule is not a matter of public interest is incorrect.[7]

## II. NO BOND IS NECESSARY AT THIS TIME

LightSquared argues Ahuja should be required to post a $230 million bond if a stay were granted to December 15, 2015 to compensate for additional pre- and postpetition credit facility interest and preferred equity obligations, additional professional and U.S. Trustee fees, and working capital commitment, which would arguably reduce availability under LightSquared's exit facilities. Even if the Court entered a stay of the Confirmation Order, there is insufficient evidence of the harm that would result. Mr. Hootnick's opposing declaration does not compare the interest obligations under the pre- and post-consummation capital structures, does not say how he determined that the blended rate would be cheaper, and does not say what the total amount of the post-consummation interest expense will be. Moreover, there would be no cost if the Court only stays that portion of the Plan that provides for the distribution of the equity to which Ahuja would be entitled if he prevails on this appeal.

### A. Reduced Exit Facility Availability Does Not Justify a Bond

A reduction in exit facility availability alone, however, cannot justify a bond because it would only affect New LightSquared and its owners, not LightSquared's creditors, who will be paid in full under the Plan. District courts evaluating whether to require a bond under Bankruptcy Rule 8007 have looked to case law interpreting Rule 62(d). See, e.g., Adelphia, 361 B.R. at 350. Courts interpreting Rule 62(d) make clear the bond's purpose is to secure creditors'

---

[7] See Kansas City Terminal Ry. Co. v. Central Union Trust Co. of N.Y., 271 U.S. 445, 455 (1926) (which forms the basis for Case v. L.A. Lumber Prods. Co., 308 U.S. 106 (1939)) (deciding scope of absolute priority rule's new value exception is in the public interest); In re Friedman, No. 07-2135, 2011 WL 1193470, at *1 (Bankr. D. Ariz. March 29, 2011) (whether absolute priority rule applies in individual chapter 11 cases is a matter of public interest).

right to payment while an appeal of its judgment is pending. Morgan Guar. Trust Co. of N.Y. v. Republic of Palau, 702 F. Supp. 60, 65 (S.D.N.Y. 1988), vac'd on the merits (not on the stay or bond), 924 F.2d 1237 (2d Cir. 1991) (citing Texaco Inc. v. Penzoil Co., 784 F.2d 1133, 1155 (2d Cir. 1986)) ("district court has discretion to grant a stay of judgment with no supersedeas bond … if doing so does not unduly danger the judgment creditor's interest in ultimate recovery").

This applies with equal force to Bankruptcy Rule 8007. The Adelphia court set a bond to protect against "value-erosion resulting in a decreased distribution" as a consequence of a stay. 361 B.R. at 354. The court required a bond following its determination a stay pending appeal would "diminish the value of [the] estate" and "endanger … creditor's interest in the ultimate recovery"). Id. at 351, 368 (citing Republic of Palau, 702 F. Supp. at 65 (quoted above)). See also Tribune, 477 B.R. at 483 (court required a bond after determining a stay would result in "harm to non-moving creditors" in the amount of approximately $1 billion); In re Suprema Spec., Inc., 330 B.R. 93, 96 (S.D.N.Y. 2005) ("Because a stay would … not hinder payments to creditors, no bond will be required" under Bankruptcy Rule 8005); In re Sphere Holding Corp., 162 B.R. 639, 644-45 (E.D.N.Y. 1994) (no bond required "because neither the creditors nor the U.S. Trustee will likely be damaged if debtor is unsuccessful on appeal").

In the instant case, there is no harm to the estate: New LightSquared, not LightSquared, is the borrower under both exit facilities and the estate terminates on the Plan effective date when the transactions contemplated by the Plan close and LightSquared's property vests in New LightSquared. In addition, there can be no dispute creditors will not be harmed by a stay because if Ahuja does not prevail they will still be paid in full on the Plan effective date. LightSquared argues it should be bonded for the loss of future working capital availability under its proposed exit facilities. However, working capital means funds available for investment. Black's Law Dictionary (10th ed. 2014). Without knowing the cost of the new working capital,

the circumstances under which it might be deployed and the likely return on such capital, any damages resulting from loss of the same are entirely speculative and is not the type of harm that an appellate bond is intended to secure.[8] This is particularly true here as LightSquared represented it will be drawing the full amount of both exit facilities upon Plan consummation and will therefore be paying interest on the full amount loaned under each facility regardless of whether or how working capital is deployed.[9]

In over 10 pages spent describing "harms" to "LightSquared and its stakeholders," LightSquared cites only two decisions, Adelphia and In re Calpine Corp., No. 05-60200, 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008), for the proposition that interest accrual is a "real and significant harm" that must be considered when setting a bond. However, in Adelphia interest accrual reduced creditor recoveries, unlike in the instant case. Moreover, in Calpine shareholders only received warrants "due to negotiations among the parties" even though the debtors' valuation did not support a distribution to equity. 2008 WL 207841, at *2. Finally, the Calpine court's conditioning a stay on the posting of a $900 million bond was dicta because the court determined the moving shareholders were not entitled to a stay in the first instance. Id. at *7. LightSquared has not cited a single decision that supports conditioning a stay pending appeal on a bond in a solvent chapter 11 case. Finally, it should be noted in both of these cases, the dispute centered on whether opportunistic hedge funds could extract value from the chapter 11

---

[8] In re President Casinos, Inc., 360 B.R. 262, 266 (B.A.P. 8th Cir. 2007) ("[a] court is not required to order a bond to protect a party from economic damages that are speculative"); Simon Prop. Group, Inc. v. Taubman Ctrs., Inc., 262 F. Supp. 2d 794, 798-99 (E.D. Mich. 2003) (bond unnecessary because defendants' "assertion that it may incur damages in the proposed bond amount is … purely speculative"); Bosley v. WildWetT.com, 310 F. Supp. 2d 914, 936 (N.D. Ohio 2004) ($100 bond where defendants offered "scant evidence regarding the harm they will suffer").
[9] Samet Decl. Ex. 2 ("the Engagement Letter provides that the full amount of the Working Capital Facility (i.e., $1.75 billion) be arranged now and funded in one draw on the Effective Date"). Because the Working Capital Facility will be funded in a single draw and the Second Lien Exit Facility is a term loan facility, LightSquared's suggestion that "a stay pending appeal will increase the absolute amount of New LightSquared's indebtedness post-emergence" is plainly incorrect.

process.[10] In contrast, Ahuja was awarded his equity pursuant to a settlement of his employment agreement approved by the Bankruptcy Court on notice to all creditors.[11]

Moreover, LightSquared's argument that it needs to emerge from bankruptcy as soon as it obtains FCC approval of the CoC Application is inconsistent with its FCC submissions. Those submissions requested expedited consideration of the CoC Application solely on the grounds that LightSquared needs to consummate the Plan before termination of the Plan Support Agreement on December 15, 2015 and before maturity of its postpetition loan facilities on December 30, 2015). Samet Decl. Ex. 3 at 20 ("Prompt action by the Commission is necessary for LightSquared to meet its loan obligations before these dates."); id. Ex. 4 at 17 (same).

At a minimum, if this Court determines to stay consummation of the Plan, no bond should be required until the FCC has approved the CoC Application and all other Plan conditions have been satisfied or waived, as prior to such time LightSquared cannot effect the change of control which will result from Plan consummation.

### B. LightSquared's Budgeted Professional Fees Do Not Support a Bond

LightSquared asserts Ahuja should bond the amount budgeted for professional fees for the period a stay is in effect ($5.4 million per month). However, post-confirmation professional fees would continue to accrue regardless of whether a stay is entered and regardless of the outcome of this appeal. Accordingly, the only additional fees that the estate might incur relate to this appeal. However, any such fees do not support a bond absent a statute or agreement

---

[10] See Adelphia, 361 B.R. at 341-42; Calpine, 2008 WL 207841, at *1. The facts of these two cases were fairly extreme. In Calpine, certain hedge funds purchased the debtor's equity during the bankruptcy, settled their confirmation objections and the valuation trial was obviated. On a later motion for reconsideration, the court refused to stay confirmation of the plan. In Adelphia, a consortium of hedge funds who were awarded a sizable distribution under the plan sought court authorization to notify the general creditor body their respective distributions would be clawed back if the bondholder group prevailed on appeal.

[11] Contrary to LightSquared's suggestion that Ahuja is a Johnny-come-lately, it bears emphasizing (1) Ahuja negotiated for his share of LightSquared equity at the outset of LightSquared's chapter 11 cases, (2) LightSquared's prior, pre-Auction 97 plan provided for a distribution to Ahuja of common equity in the reorganized entity, and (3) it was only after Ahuja was singled out as the sole person in this proceeding not to receive a distribution that he timely filed his confirmation objection.

modifying the American Rule. Adsani v. Miller, 139 F.2d 67, 75 (2d Cir. 1998) (interpreting Rule 7 to allow attorney's fees to be included in a bond where underlying statute provided for fee shifting). Further, administrative costs do not constitute harm sufficient to avoid imposition of a stay where an appeal's merits justify one. In re Lambert Oil Co., 375 B.R. 197, 201 (W.D. Va. 2007) ("While there is no doubt that a stay of the judgment may cause … added administrative expense, I believe that there is sufficient substance to MEO's appeal to justify a stay").

### C. Factors Weighing Against a Bond

Multiple factors weigh against conditioning a stay on Ahuja posting a bond:

- Likelihood of Success. Ahuja's likelihood of success on the merits weighs against imposition of a bond.[12]

- Absence of Bond in Coltex Loop, DBSD. As noted in Ahuja's opening brief, no bond was required in DBSD or Coltex Loop, both of which resulted in reversal of confirmation orders for failure by the bankruptcy court to properly apply the absolute priority rule. See DBSD, 634 F.3d at 88; In re Coltex Loop Central Three Partners, L.P., No. 96-29 (S.D.N.Y. July 19, 1996) (stay granted at Docket No. 9 with no bond posted to the docket).

- Inability to Pay Amount Requested by LightSquared. Ahuja, an individual, cannot post a bond in the amount LightSquared seeks. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1211 (9th Cir. 2000) (court should not impose bond in amount so high it "would risk denying … access to judicial review").

### CONCLUSION

For the foregoing reasons, Ahuja respectfully requests a stay of the Confirmation Order (a) to December 15, 2015, without prejudice to his right to seek renewal of such stay, or alternatively (b) to that portion of the Plan that provides for the distribution of the equity to which Ahuja would be entitled if he prevails on this appeal.

---

[12] See Cal. v. Tahoe Regional Planning Agency, 766 F.2d 1319, 1326 (9th Cir. 1985) (likelihood of success favors "a minimal bond or no bond at all"); Continuum Co., Inc. v. Incepts, Inc., 873 F.2d 803-04, 803 (5th Cir. 1989) ("courts have waived the security requirement when they have found that the plaintiff was … likely to succeed on the merits"); RLS Assocs., LLC v. United Bank of Kuwait PLC, 464 F. Supp. 2d 206, 225 (S.D.N.Y. 2006) ("If objection be made that factoring the likelihood of success into the amount of a security bond constitutes improper prejudging of the merits of litigation, the answer … is that such an exercise is inherent in any fixing of security for costs by a district court").

| | |
|---|---|
| Dated: New York, New York<br>July 24, 2015 | STORCH AMINI & MUNVES PC<br><br>/s/ Avery Samet<br>Bijan Amini<br>Avery Samet<br>Jeffrey Chubak<br>2 Grand Central Tower, 25th Floor<br>140 East 45th Street<br>New York, New York 10017<br>(212) 490-4100<br><br>*Attorneys for Appellant Sanjiv Ahuja* |