# MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

**28 LIBERTY STREET**
**NEW YORK, N.Y. 10005-1413**

212-530-5000

FAX: 212-530-5219

Michael L. Hirschfeld
Senior Consulting Counsel
DIRECT DIAL NUMBER
212-530-5832
Fax: 212-822-5832
E-MAIL: mhirschf@milbank.com

| | |
|---|---|
| **LOS ANGELES** 213-892-4000 FAX: 213-629-5063 | **BEIJING** 8610-5969-2700 FAX: 8610-5969-2707 |
| **WASHINGTON, D.C.** 202-835-7500 FAX: 202-835-7586 | **HONG KONG** 852-2971-4888 FAX: 852-2840-0792 |
| **LONDON** 44-20-7615-3000 FAX: 44-20-7615-3100 | **SEOUL** 822-6137-2600 FAX: 822-6137-2626 |
| **FRANKFURT** 49-69-71914-3400 FAX: 49-69-71914-3500 | **SINGAPORE** 65-6428-2400 FAX: 65-6428-2500 |
| **MUNICH** 49-89-25559-3600 FAX: 49-89-25559-3700 | **TOKYO** 813-5410-2801 FAX: 813-5410-2891 |
| | **SÃO PAULO** 55-11-3927-7700 FAX: 55-11-3927-7777 |

July 27, 2015

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street, Room 1950
New York, NY 10007

      Re:    *Sanjiv Ahuja v. LightSquared Inc., et al., No. 15-cv-2342,* on appeal from
              *In re LightSquared Inc., et al., Ch. 11 Case No. 12-12080*
              <u>Submission in Response to Appellant Ahuja's Reply dated July 24, 2015</u>

Dear Judge Forrest:

In his motion for stay filed July 20, 2015, Sanjiv Ahuja ("<u>Ahuja</u>") sought, during the pendency of his appeal before this Court and any appeal to the Second Circuit, to stay LightSquared from taking any actions to implement the Plan.[1]  In his reply, Ahuja explicitly "limits his request" and changes the relief he seeks.  He now asks, in the alternative, for a limited stay of the Confirmation Order that would terminate on December 15, 2015 ("<u>New Stay #1</u>"), *or* a stay only of "that portion of the Plan that provides for the distribution of the equity to which Ahuja would be entitled if he prevails on this appeal" ("<u>New Stay #2</u>").  (Reply at 1.)  Having thus recast his request for relief, Ahuja argues that a bond is not required because neither new stay alternative will injure LightSquared and its stakeholders in any way.

---

[1]     The motion sought "a stay pending appeal to maintain the status quo" and was expressly styled as "filed in response to LightSquared's letters, dated July 17 and 20, 2015 [Docket No. 31 and 33], insisting that Ahuja file a formal motion to prevent LightSquared from moving immediately to consummate the Plan upon receipt of Federal Communications Commission ('FCC') approval of LightSquared's pending change of control application." (Ahuja Memo at 1.)  Ahuja noted that the Plan could become effective at any time "if all consummation conditions are satisfied or at the election of LightSquared and the New Investors," who have the option to waive such conditions. (*Id.* at 2.)

Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP

Regarding New Stay #1, Ahuja presumes that, unless a further stay is granted, actual payment or other satisfaction of creditor and preferred equity claims will occur on December 15, 2015.  (*See* Reply at 7 (asserting that LightSquared's stakeholders "will still be paid in full on the Plan effective date").)  New Stay #1 thus contemplates, in contrast to the stay Ahuja initially sought, that all steps under the Plan *except* the actual payment or other satisfaction of creditors and preferred equity holders can (and will) be completed before December 15, 2015.  (*See* Ahuja Reply at 9 (arguing that, under New Stay #1, even if a bond is required—and he argues that none should be—that bond should not be required "until the FCC has approved the CoC Application and all other Plan conditions have been satisfied or waived").)  Ahuja asserts that New Stay #2 likewise requires no bond, because a delay in the issuance of the New LightSquared common stock claimed by Ahuja (ostensibly the sole relief effected by the stay) will not delay Plan implementation at all and thus will not injure LightSquared or its stakeholders.

Ahuja asserts there would be no injury under New Stay #1 because it would allow all creditors to be "paid in full" on December 15, 2015, the outside closing date under the Plan.  (Reply at 6, 7.)  This suggestion of payment in full on December 15 is wishful thinking.  Ahuja reserves the right to seek a further stay if New Stay #1 is granted, and he undoubtedly will.  Moreover, as set forth in LightSquared's Opposition (at 17), neither of LightSquared's exit financing lenders is obliged to move forward if a stay pending appeal is in effect.  Ahuja offers no support for his implicit assumption that they nevertheless will, so that all required funding will be in place on December 15, or that if they do not act before December 15, 2015, as is their right, and there is no stay in effect on that day, the myriad transactions necessary to allow LightSquared to exit bankruptcy can be effected in one day.  They cannot.

Ahuja also argues that no bond is required because the accretions to LightSquared's DIP loans, existing secured debt and preferred equity interests caused by the stay purportedly will affect only New LightSquared and thus is not relevant to a stay.  Ahuja is both wrong on the law[2] and financially naive.  In order to arrive at a consensual plan of reorganization, a substantial number of existing creditors, including many who are not plan sponsors, compromised and agreed to forego cash payments and accept instead new debt or new equity securities in satisfaction of their claims.  Their recoveries are not, as Ahuja mistakenly suggests, assured, but rather are entirely dependent upon the performance of New LightSquared.  Saddling New LightSquared with more than $130 million of additional debt and preferred equity obligations it would not otherwise have had to bear, and reducing its limited working capital to pay nearly $50 million of accretions to the current DIP loans, commitment fees, and administrative expenses LightSquared would not have had to incur, would weaken New LightSquared financially and imperil creditor recoveries.  The injury from New Stay #1 is not limited to New LightSquared, but threatens to adversely affect creditor and preferred equity recoveries.

---

[2]   *See Triple Net Invs. IX, LP v. DJK Residential, LLC (In re DJK Residential, LLC)*, No. 08-10375 (JMP), 2008 U.S. Dist. LEXIS 19801, at *11-12 (S.D.N.Y. Mar. 7, 2008) (irreparable injury to non-movants where a stay "would jeopardize [the debtor's] ability to keep their business afloat," including by "limit[ing] their liquidity"); *In re Gen. Motors Corp.*, 409 B.R. 24, 33 (Bankr. S.D.N.Y. 2009), *aff'd*, 2009 U.S. Dist. LEXIS 61279 (S.D.N.Y. July 9, 2009) (denying stay pending appeal where court found, "the consequences, by reason of the loss of liquidity and the loss of consumer confidence, would be disastrous . . . We're talking about the death of a company"); *In re W.R. Grace & Co.*, 475 B.R. 34, 208 (D. Del. 2012) (denying stay pending appeal that would have "detrimental effects for both Grace [the debtor] and its thousands of creditors"); *see also In re Calpine Corp.*, No. 05-60200, 2008 Bankr. LEXIS 217, at *17 (Bankr. S.D.N.Y. Jan. 24, 2008) (noting potential injury to creditors from post-emergence decrease in value of stock used to satisfy their claims).

**Milbank, Tweed, Hadley & McCloy LLP**

Ahuja argues that no bond is required under the New Stay #2 because the Plan can be substantially consummated, with only the distribution of the New LightSquared shares he claims suspended until final disposition of his appeal(s). Ahuja asserts that any delay in the distribution of those shares will not be meaningful, as LightSquared will be closely held following emergence from bankruptcy, and the only difference will be that it will have an additional shareholder if Ahuja wins his appeal. (Reply at 5.) This is more wishful thinking by Ahuja.

Ahuja holds a common equity interest, and there are *no shares earmarked for distribution to holders of common equity under the Plan*. "Holding back" the shares Ahuja claims are his would require that the Plan's distribution of New LightSquared common stock be blown up entirely. Even if the Court were to assume that the distribution of New LightSquared shares as provided in the Plan could go forward with shares claimed by Ahuja somehow held back for him uniquely among all holders of LightSquared common equity interests—an action that would in fact violate Bankruptcy Code Section 1123(a)(4)'s requirement (which Ahuja mistakenly invokes against the Plan as part of his appeal) that all claims in a creditor or interest holder class receive the same treatment—from whom will those shares be taken? Ahuja does not say; he simply asks the Court to assume that Harbinger, Centerbridge, Fortress and SIG (JPMorgan's affiliate) will all close into a black hole, not knowing what their respective ownership percentages will be. Yet, he offers no basis at all to believe this would occur, and his implicit assumption—that parties who negotiated for many months to reach a carefully balanced compromise will fulfill their financial obligations without any assurance that the compromise will be honored or that they will receive their bargained-for return—is facially untenable. The distribution scheme would be different from what these parties voted to approve and committed to invest into, and if these parties do not invest because of the uncertainties created by New Stay #2, the Plan would fail and the Plan distributions will not occur.[3]

For these reasons, the new alternative forms of stay relief sought by Ahuja should not be granted, and, if granted, should be conditioned upon the posting of a substantial bond.

            Respectfully,

            /s/ *Michael L. Hirschfeld*

            Michael L. Hirschfeld

cc:  Avery Samet, Esq. and ECF List

---

[3] Ahuja argues at length that his appeal should *not* be equitably mooted, because (1) he can be granted effective relief notwithstanding substantial consummation, and (2) equitable mootness is constitutionally untenable, citing *In re One2One Comm'ns, LLC*, __ F.3d __, No. 13-3410, 2015 WL 4430302 (3d Cir. July 21, 2015). Ahuja thus supplies the details of the position he "reserved," but did not discuss in his initial moving papers, regarding equitable mootness. (*See* Ahuja Memo at 5.) In so doing, Ahuja underscores the *absence* of irreparable injury requiring a stay. LightSquared noted in its opposition that Ahuja cannot have it both ways, asserting irreparable injury arising from the risk of equitable mootness while also suggesting—without more—that mootness might not arise. In his reply, Ahuja has come down firmly on one side. Doubtless impelled by the prospect that his motion for stay will be denied or, if granted, will require a bond he will decline to post, Ahuja now unambiguously seeks to lay the groundwork for an argument that his appeal cannot be equitably mooted. The motion for stay is not the proper venue in which to determine whether future events may cause Ahuja's appeal to be equitably mooted. The threat of irreparable injury to Ahuja, however, must be determined now, and on this critical issue Ahuja makes clear in his reply that, in his view, there is no such risk under either of his newly proposed alternatives.